# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J.W. SPORTY SMITH, JR., | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : No. 09-4253 |
| ZEEKY CORPORATION, et al., | : |
| Defendants. | : |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                 MAY 7, 2010

Presently before this Court is the unopposed "Motion for Judgment on the Pleadings and/or Summary Judgment" filed by Defendants Zeeky Corporation ("Zeeky") and Oscar Zatz ("Zatz") (collectively, "Defendants" or "Zeeky and Zatz"). For the reasons set forth below, the Motion will be granted.

**I.      BACKGROUND**

On September 18, 2009, Plaintiff J.W. Sporty Smith, Jr. ("Smith"), acting pro se, filed his Motion to Proceed In Forma Pauperis. On September 28, 2009, Smith's "Petition for Damages" was filed. On that same date, Plaintiff's Petition was dismissed without prejudice pursuant to Neitzke v. Williams, 490 U.S. 319, 327 (1989). In our Order dismissing Smith's Petition, we afforded Smith twenty days to amend his Petition, "clearly specifying the Defendants who, he alleges, committed the acts or omissions at issue." (September 28, 2009 Order ¶ 2.) On October 12, 2009, Smith filed his "First Amended Petition for Damages." On October 27, 2009, the Court held a hearing at which Smith appeared with financial documentation supporting his

Motion to Proceed In Forma Pauperis. As a result of the hearing, we granted Smith's Motion and ordered that Smith's Complaint be filed against Zeeky and Zatz only.

Smith's Complaint asserts the following claims against Defendants: (1) a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA") (Count I); (2) Invasion of Privacy by Intrusion upon Seclusion (Count II); (3) Breach of Contract (Count III); (4) Justifiable Reliance (Count IV); (5) Libel and Slander (Count V); (6) Breach of Duty of Good Faith and Fair Dealing (Count VI); (7) Fraud (Count VII); (8) Unjust Enrichment (Count VIII); (9) Unfair Trade Practices (Count IX); (10) Deceit (Count X); (11) Punitive Damages (Count XI); and (12) Attorney Fees and Court Costs (Count XIII).[1]

In his Complaint, Smith alleges that on or around January 28, 2009, he entered into an agreement to purchase real estate[2] from Zeeky, Zatz and numerous individuals and entities that have been dismissed from this action (collectively, the "Original Defendants"). (Pl.'s Compl. ¶ 1.) Smith asserts that the parties executed a letter of intent in connection with the real estate transaction and that "[p]ending the resolutions of the zoning issues by Defendants and the closing of the property acquisition, it was agreed that Smith would take occupancy of the Property for the purpose of cleaning it, renovating it and furnishing it in preparation for use by and in his business." (Id. ¶¶ 2-12.) He further alleges that he provided the Original Defendants with $2,500 in return for keys to the property at issue. (Id. ¶¶ 13-14.)

---

[1] Count XII of Smith's Complaint asserts a claim for negligence against individuals and entities other than Zeeky and Zatz.

[2] Smith's Complaint indicates that the property at issue is located at the following addresses: 4721-4745 Oxford Avenue, Philadelphia, Pennsylvania 19124, and 4742 Frankford Avenue, Philadelphia, Pennsylvania 19124.

Smith asserts that on or about February 24, 2009, in reliance on the agreement and on the Original Defendants' promises, he took possession of the property, began cleaning and renovating it and transferred some of the utilities to his name. (Id. ¶¶ 15-17.) Smith further claims that he "acquired furnishings, furniture and equipment to furnish the Property and set up his business in the Property, well over $30,000.00 and $20,000.00 to clear violations." (Id. ¶ 18.)

Smith states that on or about April 24, 2009, the Original Defendants "informed Smith that the zoning changes would cost Defendants too much to affect and inquired whether Smith would waive same . . . ." (Id. ¶ 19.) Smith claims that he "reiterated that the zoning changes were needed and asked that Defendants act with deliberate speed to address same." (Id. ¶ 20.) However, Smith asserts that despite his repeated demands, the Original Defendants never effectuated the zoning changes. (Id. ¶ 21.) Nevertheless, he maintains that although the zoning changes were not made, he continued to improve the property and pay its property taxes and utilities bills. (Id. ¶¶ 22-23.)

Smith contends that on or about July 8, 2009, counsel for the Original Defendants sent him a notice to vacate the property by July 18, 2009 or "face eviction for non-payment of rent." (Id. ¶¶ 24-25.) Finally, Smith alleges that two days prior to the July 18th deadline, the Original Defendants locked him out of the property and refused to allow him to retrieve his personal items, furniture, equipment, furnishings and decorations. (Id. ¶¶ 26, 29.)

On March 1, 2010, Defendants filed the instant Motion. In their Motion, Defendants assert that Zatz formed Zeeky to own the commercial building at issue. (Defs.' Mot. for J. on the Pleadings and/or Summ. J. at 1.) Defendants state that "Zeeky does not engage in, and has never engaged in, any debt collection activities on behalf of any third party. Neither does Oscar Zatz,

personally. Zeeky and Oscar Zatz also do not regularly engage in the debt collection business." (Id. at 2.) Defendants assert that through Louis A. Petro ("Petro"), Zeeky entered into a listing contract with Coldwell Bankers Commercial Diamond-Elite Realtors, to either sell the property or lease it for Zeeky. (Id.) Defendants claim that in 2008, Smith approached Petro and expressed an interest in either buying or leasing the property for the purpose of operating a sports bar. (Id.) Defendants allege that "[a]ny agreement between plaintiff[]. . . and Zeeky[]. . . in connection with the Property, would 'require further documentation and approvals, including the preparation and approval of a formal agreement setting forth the terms and conditions of the proposed lease/purchase in more detail (the 'Purchase Agreement').'" (Id. at 2-3.) Defendants assert, however, that no Purchase Agreement was ever prepared or signed by Smith or by Zeeky. (Id. at 3.) Rather, Defendants claim that "[s]everal drafts of a Lease Agreement or Purchase Agreement were prepared, through Coldwell Banker, but plaintiff and Zeeky never reached a meeting of the minds as to a final, signed agreement for Smith to lease or rent the Property." (Id.)

Regarding Smith's claim under the FDCPA, Defendants state that all of the utilities services for the property have been in Zeeky's name during the entire time which Zeeky has owned the property. (Id.) Defendants claim that "[a]s part of the agreement being negotiated with plaintiff, the plaintiff was supposed to be responsible to [sic] for payment or reimbursement to Zeeky Corporation of the utilities and taxes." (Id. at 3-4.) Defendants allege, however, that Smith never paid for any of the utilities services or taxes at the property, but rather, they were all paid by Zeeky. (Id. at 4.) Therefore, Defendants assert that "[t]he debts upon which plaintiff bases his claims in his Complaint (rent, utilities, and taxes) would be direct obligations that plaintiff would have owed to Zeeky Corporation, in connection with plaintiff's usage of the

4

Property – Zeeky Corporation would be the creditor to whom those debts were owed." (Id. at 3.) Finally, Defendants state that because Smith admits in his Complaint that he began setting up his business in the commercial building, his usage of the property was for a business purpose rather than a "consumer debt." (Id. at 4.)

The Certificate of Service attached to Defendants' Motion indicates that on March 1, 2010, the Motion had been served via first-class mail to Smith himself, notwithstanding the fact that on February 19, 2010, Edward B. Mendy, Esq. ("Mendy") entered a notice of appearance in this case on behalf of Smith. Therefore, on March 22, 2010, the Court contacted counsel for Smith as well as for Defendants. Mendy requested that the Court grant him seven additional days in which to respond to the Motion, a request which counsel for Defendants did not oppose. We granted Mendy's request. Mendy, however, did not file a response to the Motion, but rather, filed an untimely Answer to Defendants' Counterclaims.

On April 8, 2010, the Court attempted to contact Mendy in order to set up a status conference with both attorneys over the telephone. However, Mendy could not be reached either at the telephone number entered on the docket (apparently Mendy's home number) or the telephone number he provided in his Answer (his ostensible "office" number). The Court's clerk left a voicemail message for Mendy at his office number, but Mendy did not return the call. On April 14, 2010, the Court's clerk again attempted to contact Mendy in order to arrange a conference, but Mendy could not be reached at either number. A voicemail message was left at Mendy's office number, but again, was not returned. On April 16, 2010, the Court's clerk left another voicemail message for Mendy at his office number, as well as a message with an individual at the home number, but Mendy did not return either call. To date, Mendy has not

5

filed a response to Defendants' Motion, nor has he responded to the Court's communications.

## II.     STANDARDS OF REVIEW

### 1.     Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The moving party has the initial burden of informing the Court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Anderson, 477 U.S. at 249.  A factual dispute is material only if it might affect the outcome of the suit under governing law.  Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather, that party must go beyond the pleadings and present "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325).  Further, the non-moving party has the burden of producing evidence to establish prima facie each element of its claim.  Celotex, 477 U.S. at 322-23.  If the Court, in viewing all reasonable inferences in favor of the non-moving party,

determines that there is no genuine issue of material fact, then summary judgment is proper. Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987). Moreover, "[i]f the opposing party does not . . . respond [to the summary judgment motion], summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

### 2. Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) allows any party to move for judgment on the pleadings after the pleadings have closed, but not within such time as to delay trial. In order to prevail on such a motion, the movant must show "that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 253 (3d Cir. 2004). In considering a motion for judgment on the pleadings, this Court views the facts alleged in the pleadings as true and any inferences to be drawn therefrom in the light most favorable to the non-movant. Id.

### 3. Supplemental Jurisdiction

District courts have "a duty to review their own jurisdiction, sua sponte if necessary." Stires v. Sprint Corp., No. 95-1510, 1995 U.S. Dist. LEXIS 15432, at *12 (D.N.J. Sept. 18, 1995) (citing Employers Ins. of Wausau v. Crown Cork & Seal Co., Inc., 905 F.2d 42, 45 (3d Cir. 1990) (deciding sua sponte not to exercise supplemental jurisdiction over plaintiff's state law claim). In United Mine Workers v. Gibbs, the Supreme Court established the concept that a district court could hear non-federal claims over which it did not have diversity jurisdiction provided those claims shared a "common nucleus of operative fact" with the claims that supported the court's original jurisdiction. 383 U.S. 715, 725 (1966). In 1990, Congress sought to "clarify and codify instances appropriate for the exercise of pendent or 'supplemental'

jurisdiction in district courts" in 28 U.S.C. § 1367. Swint v. Chambers County Comm'n, 514 U.S. 35, 48 n.6 (1995); see also Sinclair v. Soniform, Inc., 935 F.2d 599, 603 (3d Cir. 1991) (treating 28 U.S.C. § 1367(a) as codifying the jurisdictional standard established in Gibbs).

Section 1367(a) states:

> Except as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The "case and controversy" requirement is satisfied when the "state and federal claims . . . derive from a common nucleus of operative fact." Gibbs, 383 U.S. at 725. "In trying to set out standards for supplemental jurisdiction and to apply them consistently, [the Third Circuit has] observe[d] that, like unhappy families, no two cases of supplemental jurisdiction are exactly alike." Nanavati v. Burdette Tomlin Mem'l Hosp., 857 F.2d 96, 105 (3d Cir. 1988). If the federal and state claims "are merely alternative theories of recovery based on the same acts," then supplemental jurisdiction exists. Lyon v. Whisman, 45 F.3d 758, 761 (3d Cir. 1995) (quoting Lentino v. Fringe Employee Plans, Inc., 611 F.2d 474, 479 (3d Cir. 1979) (internal quotation marks omitted)). However, if the state law claims are "totally unrelated to a cause of action under federal law," then supplemental jurisdiction is lacking.[3] Id.

---

[3] The District of New Jersey has noted:

> While some courts have read the "common nucleus of operative facts" to require only a "loose" nexus between a plaintiff's federal and state claims, the Third Circuit has expressly rejected this interpretation. The Third Circuit has reasoned that "there is virtually no support for this broad reading of Article III and Gibbs." As one court has noted, "[i]t is therefore apparent that the Third Circuit interprets § 1367 and Gibbs narrowly."

Armstrong v. Moylett, No. 00-3441, 2006 U.S. Dist. LEXIS 36650, at *7-8 (D.N.J. May 25, 2006) (internal and external citations omitted).

8

Section 1367(c) states:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Thus, even if supplemental jurisdiction is found to exist in a case, "the discretion to exercise supplemental jurisdiction remains with the district court." Greenwood Partners, L.P. v. Cimnet, Inc., No. 01-6624, 2003 U.S. Dist. LEXIS 18099, at *10 (E.D. Pa. Sept. 26, 2003); N.J. Turnpike Auth. v. PPG Indus., 197 F.3d 96, 113 (3d Cir. 1999) (stating that a district court's decision to exercise supplemental jurisdiction over a plaintiff's state law claims is discretionary). Moreover, district courts should "hesitate to exercise jurisdiction over state claims" if the "considerations of judicial economy, convenience and fairness to litigants . . . are not present . . . ." Gibbs, 383 U.S. at 726.

### III. DISCUSSION

Local Rule of Civil Procedure 7.1 states:

> Unless the parties have agreed upon a different schedule and such agreement is approved under Local Civil Rule 7.4 and is set forth in the motion, or unless the Court directs otherwise, any party opposing the motion shall serve a brief in opposition, together with such answer or other response which may be appropriate, within fourteen (14) days after service of the motion and supporting brief. In the absence of timely response, the motion may be granted as uncontested except that a summary judgment motion, to which there has been no timely response, will be governed by Fed.R.Civ.P. 56(c).

Local R. Civ. P. 7.1(c). Thus, despite Smith's failure to respond, we will consider the merits of

Defendants' Motion, insofar as it is a motion for summary judgment, rather than grant it as uncontested. State Auto Prop. & Cas. Ins. Co. v. Feger, No. 07-1048, 2009 U.S. Dist. LEXIS 46510, at *2 (E.D. Pa. Jan. 8, 2009) (citing Local R. Civ. P. 7.1(c)).

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Consumers who have been subjected to abusive, deceptive and unfair debt collection practices are entitled to recover damages and attorney's fees and costs. 15 U.S.C. § 1692k(a). However, in order for the FDCPA to apply, the prohibited practices must occur in an attempt to collect a "debt" as defined by the statute:

> The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). Collection of commercial debt "is beyond [the Act's] coverage." Staub v. Harris, 626 F.2d 275, 278 (3d Cir. 1980) (citing S. Rep. No. 382, 95th Cong. 1st Sess. at 3 (1977), reprinted at 1977 U.S.C.C.A.N. 1695, 1697); see also Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1168-69 (3d Cir. 1987); Sheehan v. Mellon Bank, No. 95-2969, 1995 U.S. Dist. LEXIS 13457, at *4 (E.D. Pa. Sept. 7, 1995) (stating that "the FDCPA is inapplicable to the collection of commercial debt"). In Lyon Financial Services v. Woodlake Imaging, LLC, the court found that where the counterclaimant identified itself as a "business enterprise," indicated that the debt at issue originated in "a dialogue . . . concerning means by which it could grow its operations," leased equipment to develop its business and negotiated with its "commercial landlord" to expand its space, the counterclaimant's obligation was "certainly commercial debt." No. 04-3334, 2005 U.S. Dist. LEXIS 2011, at *17 (E.D. Pa. Feb. 9, 2005).

Thus, because the debt in Lyon was not incurred "primarily for personal, family or household purposes," the court dismissed the FDCPA claim. Id. (citing 15 U.S.C. § 1692a(5)).

As mentioned, Defendants assert in their Motion that "[t]he debts upon which plaintiff bases his claims in his Complaint (rent, utilities, and taxes) would be direct obligations that plaintiff would have owed to Zeeky Corporation, in connection with plaintiff's usage of the Property – Zeeky Corporation would be the creditor to whom those debts were owed." (Defs.' Mot. for J. on the Pleadings and/or Summ. J. at 3.) Defendants also state that because Smith admits in his Complaint that he began setting up his business in the commercial building, his usage of the property was for a business purpose rather than a "consumer debt." (Id. at 4.) Defendants have attached to their Motion an affidavit by Zatz which supports these assertions.

Smith, however, rests on his pleadings. Nevertheless, Smith's Complaint also indicates that the alleged obligations at issue are commercial debts. In his Complaint, Smith asserts that the parties executed a letter of intent in connection with the real estate transaction and that "[p]ending the resolutions of the zoning issues by Defendants and the closing of the property acquisition, it was agreed that Smith would take occupancy of the Property for the purpose of cleaning it, renovating it and furnishing it *in preparation for use by and in his business*." (Pl.'s Compl. ¶¶ 2-12 (emphasis added).) He further alleges that he "acquired furnishings, furniture and equipment to furnish the Property and set up his business in the Property[]. . . ." (Id. ¶ 18.) Therefore, upon consideration of the record before the Court, we find that the alleged obligations at issue are commercial debts which are beyond the coverage of the FDCPA.

Moreover, the FDCPA's provisions generally apply only to "debt collectors." FTC v. Check Investors, Inc., No. 03-2115, 2003 U.S. Dist. LEXIS 26940, at *25 (D.N.J. July 29, 2003).

11

The FDCPA defines a debt collector, in part, as: "Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); see also Check Investors, 2003 U.S. Dist. LEXIS 26940, at *30 (citing Staub, 626 F.2d at 277) ("The Third Circuit[]. . . made clear that the FDCPA is directed at those persons who engage in business for the principal purpose of collecting debts.") "The [FDCPA] does not apply to persons or businesses collecting debts on their own behalf." Staub, 626 F.2d at 277.

In their Motion, Defendants state that "Zeeky does not engage in, and has never engaged in, any debt collection activities on behalf of any third party. Neither does Oscar Zatz, personally. Zeeky and Oscar Zatz also do not regularly engage in the debt collection business." (Defs.' Mot. for J. on the Pleadings and/or Summ. J. at 2.) Defendants have attached to their Motion an affidavit by Zatz which supports this assertion. Smith, in contrast, rests on his pleadings. He states in his Complaint that "Zeeky is a 'debt collector' as that term is defined by 15 U.S.C. § 1692a(6)" (Pl.'s Compl. ¶ 32) and that "Zatz is a natural person employed by Defendant Zeeky as a collection agent and is a 'debt collector' as that term is defined by 15 U.S.C. § 1692a(6)" (id. ¶ 33).

Under the standard of review for consideration of a motion for summary judgment, Smith is required to go beyond the pleadings and present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). He has failed to do so. Under the standard of review for consideration of a motion for judgment on the pleadings, however, Smith need not go beyond the pleadings because the Court views the facts alleged in the pleadings as true and any inferences to

be drawn therefrom in the light most favorable to the non-movant. Mele, 359 F.3d at 253. Nevertheless, unlike a motion for summary judgment, we may grant a motion for judgment on the pleadings as uncontested under Local Rule of Civil Procedure 7.1(c) without considering the merits of the motion. See Local R. Civ. P. 7.1(c) ("In the absence of timely response, the motion may be granted as uncontested except that a summary judgment motion, to which there has been no timely response, will be governed by Fed.R.Civ.P. 56(c).")

Therefore, because Smith has not contested Defendant's Motion, we will not consider the merits of the Motion insofar as it is a motion for judgment on the pleadings, but rather, simply grant it as uncontested as to Count I of Smith's Complaint. Furthermore, upon consideration of Defendant's Motion under the summary judgment standard of review, we find that summary judgment is proper as to Count I because Smith has failed to go beyond the pleadings to rebut Defendants' affidavit which shows, as a matter of law, that there are no genuine issues of material fact as to whether Smith owed a "debt" as defined by 15 U.S.C. § 1692a(5) or as to whether Zeeky and Zatz were "debt collectors" under 15 U.S.C. § 1692a(6).

Having determined that dismissal of Smith's FDCPA claim is appropriate, we turn now to the question of whether this Court has supplemental jurisdiction over Smith's state law claims and, if so, whether we should exercise such jurisdiction.[4] Smith's state law claims incorporate by reference the allegations of the previous paragraphs in the Complaint and clearly relate to the alleged agreement regarding the property at issue as well as Smith's alleged occupancy of the property and removal therefrom. Nevertheless, "[b]ecause Plaintiff's [federal] claim has been

---

[4] We note that the Court does not have diversity jurisdiction pursuant to 28 U.S.C. § 1332; consequently, we may not entertain Smith's state law claims if we do not have supplemental jurisdiction. See Armstrong, 2006 U.S. Dist. LEXIS 36650, at *5 n.4.

dismissed, the question of whether there exists a common nucleus of operative facts is moot." Greenwood, 2003 U.S. Dist. LEXIS 18099, at *10. Even if the question were not moot, however, we find it appropriate to decline to exercise supplemental jurisdiction over Smith's state law claims pursuant to 28 U.S.C. § 1367(c). As mentioned, the district courts may decline to exercise supplemental jurisdiction over a claim under § 1367(a) if, inter alia, the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, or the district court has dismissed all of the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c).

Here, we have dismissed Smith's federal claim and there are no claims remaining over which we have original jurisdiction. Therefore, pursuant to § 1367(c)(3), we should decline to exercise supplemental jurisdiction over the surviving state law claims. See Gibbs, 383 U.S. at 726 ("If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); see also Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 181 (3d Cir. 1999) (declining to disturb district court's dismissal of plaintiff's remaining "territorial claims," but nevertheless requiring district court to amend its order to reflect dismissal of claims "without prejudice"); MCF Servs. v. Ernest Bock & Sons, No. 05-1115, 2007 U.S. Dist. LEXIS 91531, at *9-10 (E.D. Pa. Dec. 11, 2007) (declining to exercise supplemental jurisdiction over state law claims pursuant to § 1367(c)(3)); Campbell v. Kelly, No. 02-6814, 2003 U.S. Dist. LEXIS 12216, at *11 (E.D. Pa. July 14, 2003) (dismissing federal claims and pendant state law claims pursuant to § 1367(c)(3)). Moreover, because we have dismissed Smith's only federal claim, the state law claims predominate by default. See Greenwood, 2003 U.S. Dist. LEXIS 18099, at *11.

We also note that § 1367 ensures that the statute of limitations is tolled to preserve the right of litigants to effective relief in state court in the event that a federal court declines to exercise its supplemental jurisdiction.  Id. at *12 (citation omitted); see also Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (stating that Congress had foreseen such a problem and provided in § 1367(d) that the period of limitations for a pendant state law claim shall be tolled while the claim is pending in federal court or for "a period of 30 days after it is dismissed unless State law provides for a longer tolling period").  Further, it has not been alleged that the principles of economy, convenience, fairness and comity would be ill-served by our decision not to exercise supplemental jurisdiction here.  Therefore, upon consideration of the foregoing factors and the facts of this case, the Court declines to exercise supplemental jurisdiction over Smith's state law claims.

As such, for the reasons stated herein, we will grant Defendants' Motion for Judgment on the Pleadings and/or Summary Judgment and dismiss Count I of Smith's Complaint with prejudice.  Furthermore, we will dismiss all of Smith's state law claims without prejudice.

An appropriate Order follows.